No. 25-1164

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

D.B.U., *et al.*,
*Appellees - Petitioners*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,
*Appellants – Respondents*.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLORADO
No. 1:25-cv-01163
The Hon. Charlotte N. Sweeney

APPELLANTS-RESPONDENTS' REPLY TO RESPONSE TO
EMERGENCY MOTION FOR A STAY PENDING APPEAL

# INTRODUCTION

The district court's temporary restraining order ("TRO") is an appealable order that is flawed from top to bottom. The district court erroneously asserted habeas jurisdiction to challenge determinations under the Alien Enemies Act ("AEA")—even though Petitioners have not been designated as alien enemies under the AEA. It further issued *statewide* "class" relief without following class procedures

and where Petitioners are not even part of the class. There is no precedent for the issuance of universal class-wide relief based on wholly speculative claims by people who are not covered by the challenged statute. It also erred in holding that the AEA notice procedures were ineffective, both because Petitioners lacked standing to challenge them (having never received such notice) and because the procedures closely track those for expedited removal, which have been upheld against due process challenges. The district court thus had no reason (or basis) to reach those due process claims. Finally, its holding that the Proclamation failed to satisfy the prerequisites under the AEA is foreclosed by *Ludecke v. Watkins*, 335 U.S. 160, 162–63 (1948).

This Court should grant a stay pending appeal.

## ARGUMENT

### I. The Judge's Injunctive Order is Appealable

*Tooele Cnty v. U.S.*, 820 F.3d 1183 (10th Cir. 2016) held that a TRO that is "more akin to preliminary injunctive relief" is appealable. That holding is controlling here. Petitioners' contrary arguments ignore the fact the district court issued a series of three injunctive orders starting on April 14, 2025, that work together to preclude the government's application of the AEA for well over the fourteen-day TRO limit. ECF 35 at 34. Petitioners also ignore that the order requires a 21-day period of notice, which is, in-and-of-itself, more than the fourteen-day period for a typical TRO. *Id.*

2

The fact that these orders limit the government's operations beyond 14 days is dispositive under this Court's *Tooele* decision.

Appellate jurisdiction is further supported by *J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682 (D.C. Cir. Mar. 26, 2025), which involved another AEA TRO. As Petitioners concede, the Supreme Court found that immediate review was warranted when the court precluded application of the AEA. Resp. 8 n.2. Here, the district court's interference with the President's application of the AEA throughout Colorado similarly requires immediate appellate consideration.

## II. Petitioners Identify No Jurisprudence Justifying Expansion of Jurisdiction to Include Speculative Habeas Cases

As the government explained previously, there is no jurisdiction over this case because Petitioners are not in detention pursuant to the AEA, they will receive notice if they are placed in AEA detention, and their claims are therefore entirely speculative. It is a basic principle of Article III that speculation of this type cannot give rise to the sort of injury in fact that allows a federal court to weigh in, because injury here is not "*certainly* impending." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) ("Allegations of *possible* future injury are not sufficient") (emphasis in original). Petitioners dispute the government's reliance on *Maleng v. Cook*, 490 U.S. 488 (1989)—a case which held that the district court lacked jurisdiction to consider a habeas challenge after the sentence imposed had expired, even if the prior conviction would be used to enhance sentences imposed for subsequent crimes.

3

Resp. 9-10. Indeed, *Maleng* clarified that jurisdiction did not extend to previous periods of detention, the point relied on by Petitioners. *Maleng*, 490 U.S. at 490–91. However, Petitioners ignore the second aspect of *Maleng*: Maleng believed that his prior sentence *could* affect any future period of detention, and the Supreme Court held this was too speculative to confer jurisdiction. *See id.*

Here, contrary to Petitioners' claim there is a "substantial risk" that detention under the AEA is "imminent," Resp. 10–12, there is no evidence that the government intends to detain either Petitioner under the AEA. Petitioners have not been designated as "Alien Enemies." ECF 35 at 5-9; Resp. 11-12. Petitioners stated that they were "issued" I-213 forms "alleging that they are members of or affiliated with [Tren de Aragua ("TdA")]." Resp. 11. But the I-213 form is not an AEA determination of notice. It is internal government documentation—a law enforcement record compiling information relevant to Title 8 removal proceedings. *Bauge v. INS,* 7 F.3d 1540, 1543 n.2 (10th Cir. 1993). They are not "issued" to noncitizens, and have nothing to do with the AEA. ECF 35 at 6, Order (government submitted redacted I-213 in R.M.M.'s bond hearing). Thus, Petitioners have not been notified under the AEA or "accused" of TdA membership, as they claim. This record is insufficient to establish "sufficient risk of 'being designated' as TdA members" under the AEA as the district court found when issuing the TRO.[1] ECF 35 at 15-16,

---

[1] The TRO was premised on a finding that Petitioners face "imminent" risk of

4

Order. Instead, it is the AEA notice that would establish that designation, and if such a designation is made, habeas consideration would then be appropriate. Therefore, Petitioners' claim is of *speculative* future detention, and thus, *Maleng* governs and precludes the district court's exercise of habeas jurisdiction here.

## III. The District Court's TRO Was Overbroad

The district court gravely exceeded its authority by ordering statewide relief without engaging in any class certification procedures, much less the "rigorous analysis" required by the Supreme Court. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). This is a case that involves *two individuals*, and they have at most speculated that in the future they may be injured by the AEA. Even putting aside this speculation, relief must be limited to them and not expanded to non-ascertainable class where Petitioners *are not even members of the class* because they have not been subjected to the AEA. This is a court acting well beyond its authority that is circumscribed by Article III and the limits on habeas. Indeed, a habeas action may not be used to issue class-wide relief given that the writ extends only to determine whether an individual's custody "is in violation of ... law[]", 28 U.S.C. § 2241(c)(3), not to impose district-wide procedures for future cases as if the court were replicating

---

designation merely because the government "failed to eliminate th[e] possibility" they could be designated as TdA members in the future. ECF 35 at 15, 30, 32, Order. Such failure-to-disprove reasoning falls far short of Petitioners proving imminence.

5

APA jurisdiction that it lacks. *See J.G.G.*, 2025 WL 1024097 (detainees may not "seek equitable relief against the implementation of the Proclamation"); *Jennings v. Rodriguez*, 583 U.S. 281, 322 (2018) (Thomas, J., concurring) ("Respondents do not seek habeas relief, as understood by our precedents" because they ask for "an injunction that would provide relief for both present and future class members").

Moreover, the district court lacked authority to grant relief to a non-ascertainable class that extends to people who are designated under the AEA and those who are not. By awarding relief to an amorphous statewide class, the district court effectively circumvented equitable limitations on universal relief in a sensitive national-security context. If nothing else, the Court should stay the district court's order insofar as it granted classwide relief, and limit any surviving order to the named plaintiffs only.

## IV. The Government's Notice Procedure Satisfies Due Process

Petitioners' assertion that the government's notice procedure is inadequate is speculative, particularly where petitioners have not been designated alien enemies and thus lacked standing to challenge the relevant notice procedures. Resp. 12–15.

In any event, the AEA permits the Executive enormous discretion to establish the conditions and processes the Executive will use to implement a Presidential Proclamation, and does not impose any particular notice time period. 50 U.S.C. § 21; *Schlueter v. Watkins*, 158 F.2d 853, 853 (2d Cir. 1946) (the AEA authorizes "the

6

making of an order of removal of an alien enemy without a court order and without a hearing of any kind"); *Ludecke*, 335 U.S. at 162–63 (noting the entirely administrative process established for determining whether an individual was an alien enemy). The only process due in this context is the process Congress has provided, *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020), and under the AEA that process is the availability of habeas relief. And as this case shows, the notice periods are sufficient to permit individuals to request and seek relief through habeas. *J.G.G.*, 2025 WL 1024097, at *2.

The government established procedures to comply with that directive. Immigration and Customs Enforcement ("ICE") serves Form AEA-21B on an alien who is detained subject to Title 50. ECF 44, Cisneros Declaration ¶ 4, 9. The notice is read to the alien in a language they understand. *Id.* ¶ 4, 9. That the notice is not *written* in the alien's native language is of no moment. Resp. 13. This is no different than the notice to appear that is provided in Title 8 removal proceedings—the form is in English and explained orally in another language, if necessary, which is commonplace for ICE who regularly works with non-English speakers. *Id.* ¶ 5-8; *Manyary v. Bondi*, 129 F.4th 473, 478 (8th Cir. 2025) ("The statute does not require notice in any language other than English."); *Platero-Rosales v. Garland*, 55 F.4th 974, 977 (5th Cir. 2022) ("[T]here is no legal authority to support her assertion that

7

the United States is required to provide notice in any language other than English."); *Khan v. Ashcroft*, 374 F.3d 825, 828 (9th Cir. 2004) (same).

Along with service, ICE informs the alien they can, and ensures that they are able, to make a telephone call to a recipient of their choosing, including to a lawyer—alleviating the concern that the alien will not be able to seek counsel. ECF 44, Cisneros Declaration ¶ 10. A federal court has recently held that this type of counsel access alleviates constitutional concerns in connection with immigration detention at Guantanamo. *Las Americas v. Noem*, No. 25-418, Oral Ruling Tr. 69, 76 (D.D.C. Mar. 14, 2025) (discussing telephone access and concluding that "[i]n light of the practices in place for access to counsel, any transferred plaintiff would be able to contact the lawyers here who represent them and seek renewed injunctive relief"). Following service, the alien is given *no less than*, and in the routine case many more than, 12 hours to merely indicate an intention to file a habeas claim. *Id.* ¶ 11, 12. Once an intention to file is expressed, the alien is given *no less than*, and typically many more than, 24 hours to file the suit. *Id.* ¶ 11, 12.

These procedures comport with the limited due process owed in this discreet context. Requiring more would "deeply intrude[] into the core concerns of the executive branch," *Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978), such as effective implementation of a wartime measure to expel designated terrorists as well as administering detention facilities, *Bell v. Wolfish*, 441 U.S. 520, 548 (1979) ("the

operation of [detention] facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial"); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).

As the government explained in its motion, Congress has created an analogously fast procedure in the expedited removal context, where "review shall be concluded ... to the maximum extent practicable within 24 hours." 8 U.S.C. § 1225(b)(1)(B)(iii)(III). Petitioners do not address why the timeframe should be slower in the context of an ongoing foreign incursion. The Supreme Court has upheld this procedure and explained that "[w]hatever the procedure authorized by Congress is, it is due process." *Thuraissigiam*, 591 U.S. at 139; *see also Am. Immigr. Laws. Ass'n v. Reno*, 18 F. Supp.2d 38, 58 (D.D.C. 1998), *aff'd*, 199 F.3d 1352, 1357 (D.C. Cir. 2000) (affirming "the dismissal of these claims substantially for the reasons stated in the court's thorough opinion"). The AEA, in turn, imposes no timeframe for notice.

Petitioners point to *Sanchez Puentes v. Garite*, 3:25-cv-00127-DB, 2025 WL 1203179 (W.D. Tex. Apr. 25, 2025) as requiring longer procedures. Resp. 4–5. But *Sanchez Puentes* shows the government's procedures are adequate: the AEA notice was provided and provided those individuals with a meaningful and adequate opportunity to challenge their AEA designation through habeas. *Sanchez Puentes*, 2025 WL 1203179 at *1. Petitioners point to *no* case where ICE provided notice

under these procedures and an alien was unable to challenge their AEA designation. Instead, following the Court's decision in *J.G.G.*, numerous detainees have brought habeas petitions in their districts of confinement challenging their detention under the AEA, and courts continue to adjudicate those claims. *See, e.g., G.F.F. v. Trump*, No. 25-cv-2886 (S.D.N.Y.); *J.A.V. v. Trump*, No. 25-cv-72 (S.D. Tex.); *A.S.R. v. Trump*, No. 25-cv-133 (W.D. Pa.); *Viloria-Aviles v. Trump*, No. 25-cv611 (D. Nev.); *A.A.R.P. v. Trump*, No. 25-cv-59 (N.D. Tex.); *Gutierrez-Contreras v. Trump*, No. 25-cv-911 (C.D. Cal.); *Quintanilla Portillo v. Trump*, No. 25-cv-1240 (D. Md.); *Sanchez Puentes v. Trump*, 25-cv-0127 (W.D. Tex.); *F.J.G.C. v. Noem*, 1:25-cv-04107 (N.D. Il.).

Contrary to Petitioners' claim, *Sanchez Puentes* demonstrates that the notice process works. The government is not required to provide procedures that a reviewing court or Petitioners find "preferable"; instead, a court "must evaluate the particular circumstances and determine what procedures would satisfy the minimum requirements of due process." *Landon v. Plasencia*, 459 U.S. 21, 35 (1982).

## V. The Proclamation Comports with the AEA

Petitioners assert that the Proclamation fails to comport with the AEA. Resp. 15-19. Petitioners' claims fail because the President's determinations that the AEA preconditions are satisfied is not subject to judicial review: "The very nature of the President's power to order the removal of all enemy aliens rejects the notion that

10

courts may pass judgment upon the exercise of his discretion." *Ludecke*, 335 U.S. at 164; *accord Citizens Protective League v. Clark*, 155 F.2d 290, 294 (D.C. Cir. 1946).

Even if courts could look behind the President's determinations, the President has properly identified a "predatory incursion" that has been "perpetrated"—*i.e.*, an entry into the United States for purposes contrary to the interests or laws of the United States. *See Amaya* v. *Stanolind Oil & Gas Co.*, 62 F. Supp. 181, 189-190 (S.D. Tex. 1945) (predatory incursion used to describe raids in Texas during hostilities with Mexico that fell short of "invasion"). That squarely fits TdA's described conduct: TdA is undertaking hostile actions and conducting irregular warfare against the territory of the United States both directly and at the direction, clandestine or otherwise, of the Maduro regime in Venezuela. *See* 90 Fed. Reg. 10,030 (Feb. 20, 2025).

The President also properly found that TdA has "infiltrated" and "acts at the direction" of a foreign nation or government. *See* Proclamation. The President has broad discretion in making such determinations. *See Hawaii*, 585 U.S. at 686. The President determined that TdA bears close connections with the Maduro regime and infiltrated Venezuelan military and law enforcement, bringing it within the AEA's scope.

11

## VI. The Government Will Suffer Irreparable Harm if a Stay Pending Appeal is Not Granted

Petitioners claim that Respondents have not shown irreparable harm." Resp. 19–20. But they ignore the President's fundamental interest in protecting the nation from the threat posed by Tren de Aragua. There is no more fundamental role for the President, and the district court's overbroad order is a serious incursion. Meanwhile, given that Petitioners are already challenging their detention in habeas proceedings, they face *no* harm remedied by the district court's order, and the Government's notice will ensure that no other purported class member will face harm without the chance to seek habeas relief on their own behalf.

## **CONCLUSION**

This Court should stay the district court's order pending appeal.

Respectfully submitted,

YAAKOV M ROTH
Acting Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

/s/ August E. Flentje
AUGUST E. FLENTJE
Special Counsel for Immigration
Civil Division, U.S. Dep't of Justice
950 Pennsylvania Ave., NW
Washington, DC 20540
202-514-3309
august.flentje@usdoj.gov

JOHN S. HOGAN
Assistant Director
Office of Immigration Litigation

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2594 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Times New Roman typeface.

<u>/s/ August E. Flentje</u>
Special Counsel for Immigration
U.S. Department of Justice

# CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

<u>/s/ August E. Flentje</u>
Special Counsel for Immigration
U.S. Department of Justice